UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AUDRY WILLIAMS,<br>    Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION d/b/a AMTRAK, *et al.*,<br>    Defendants. | )<br>)<br>)<br>)  CAUSE NO.: 2:12-CV-16-JD-PRC<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Second Motion for Leave to Amend the Complaint [DE 59], filed by Plaintiff Audry Williams on June 24, 2013. Defendant filed a response on July 24, 2013, and Plaintiff filed a reply on July 31, 2013.

This cause of action stems from a train accident that occurred on March 8, 2010, near Monon, Indiana, involving an Amtrak train on which Plaintiff was traveling as a passenger. Plaintiff filed her Complaint on January 9, 2012. On April 19, 2012, following a Rule 16(b) preliminary pretrial conference, the Court issued a Scheduling Order setting the deadline to amend pleadings for July 13, 2012, and the discovery deadline for January 10, 2013. On December 5, 2012, the Court granted an extension of the discovery deadline to May 10, 2013. On April 11, 2013, the Court granted a second extension of the discovery deadline, extending the deadline to July 9, 2013.

On June 3, 2013, Plaintiff filed her Amended Complaint with leave of Court to correct the misspelling of her first name. As noted above, Plaintiff filed the instant motion on June 24, 2013.

**ANALYSIS**

In the instant motion, Plaintiff seeks leave of Court to file a Second Amended Complaint to add a claim for punitive damages against Amtrak. On June 20, 2013, Plaintiff received a report from retained expert Colon Fulk of Railex, Inc., in which he opines that the conduct of Amtrak's

1

employees was not only negligent but also reckless, in that they failed to provide proper horn signals as the train approached the crossing, failed to reduce their speed while "lost," and continued unrestricted through dense fog. Plaintiff notes that Mr. Fulk's report indicates that the sounding of the horn at the time of the accident was deliberate and intentional, that the authorized speed limit for the track at the place of the occurrence was 60 miles per hour, and that the event recorder obtained during discovery reveals that the train was traveling at 61 miles per hour at the time of the accident.

In support of the motion, Plaintiff cites Section 4(F) of the General Rules found in the CSX Transportation Operating rules, which are quoted in Mr. Fulk's expert report:

> F. The following conditions must be reported promptly and by the quickest means to the proper authority:
> . . .
> 4. Any unusual condition that may affect the safe, efficient operation of the railroad. Trains must be protected against any known condition that may interfere with their safety. When conditions may impair visibility or affect the track or structure, the train speed must be regulated. This must be done to ensure:
>    1. The train's safe passage; and
>    2. The observance of and compliance with signal indications. In case of unusually heavy rain, storm or high water, trains must approach bridges, culverts and other points likely to be affected, at Restricted Speed.

Pl. Br., Exh A., p. 8.

Plaintiff asserts that, prior to the receipt of Mr. Fulk's June 20, 2013 report, Plaintiff had no information on which to base a claim for punitive damages against Amtrak and, accordingly, did not include such a claim in either her original or Amended Complaints. Thus, Plaintiff requests leave to filed a Second Amended Complaint to include a count for punitive damages against Amtrak. Plaintiff argues that, because such a count would involve the same incident and operative facts as already alleged in Plaintiff's original and Amended Complaints, no additional discovery will be

2

required and Amtrak will not be prejudiced. The proposed amendment makes the following allegations:

> 29. On March 8, 2010, Defendant AMTRAK, through its duly authorized agents and employees, acted willfully and wantonly in one or more of the following ways:
>
> > a. With reckless disregard for the safety of the Plaintiff, failed to reduce the throttle setting of the locomotive prior to the collision when it knew that it was reasonably necessary to do so;
> >
> > b. With reckless disregard for the safety of the Plaintiff, failed to reduce speed to avoid a collision when it knew that it was reasonably necessary to do so;
> >
> > c. With reckless disregard for the safety of the Plaintiff, failed to properly and adequately activate its horn when it knew it was reasonably necessary to do so;
> >
> > d. With reckless disregard for the safety of the Plaintiff, failed to stop or slow the train to avoid a collision when it knew it was reasonably necessary to do so;
> >
> > e. With reckless disregard for the safety of the Plaintiff, operated a passenger train at a rate of speed that was greater than it knew was reasonable under the circumstances;
> >
> > f. With reckless disregard for the safety of the Plaintiff, operated the train in excess of the authorized speed limit for the tracks, and
> >
> > g. Deliberately and intentionally failed to properly and adequately activate its horn when it knew it was reasonably necessary to do so.
>
> 30. As a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions of the Defendant AMTRAK the Plaintiff sustained great injuries of personal and pecuniary nature.

Pl. Mot., Exh 2, pp. 8-9.

Federal Rule of Civil Procedure 15 governs amendments to pleadings and provides that when a party is no longer permitted to amend its pleading as a matter of course, the "party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely

give leave when justice so requires." Fed. R. Civ. P. 15(a). The United States Supreme Court explained the term "freely give" as follows:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.-the leave sought should, as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). The standard for futility is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). *See Townsel v. DISH Network LLC*, 668 F.3d 967, 969 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). The decision whether to grant or deny a motion to amend lies within the sound discretion of the district court. *See Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

In its response brief, Amtrak makes two arguments in opposition to the proposed amendment. First, Amtrak contends that Plaintiff has failed to show good cause for seeking leave to amend her Complaint after the deadline set by the Court in its Scheduling Order, as required by Federal Rule of Civil Procedure 16(b)(4). Second, Amtrak argues that, for several reasons, the amendment would be futile because it could not withstand a motion to dismiss. The Court considers each objection in turn.

*1. Federal Rule of Civil Procedure 16(b)(4) - Good Cause*

The Court's Scheduling Order set the deadline for seeking leave to amend pleadings for July 13, 2012. Federal Rule of Civil Procedure 16 requires good cause and the judge's consent to modify a scheduling order. Fed. R. Civ. P. 16(b)(4). The "good cause" standard for Rule 16 "primarily

4

considers the diligence of the party seeking the amendment," *Trustmark Insurance Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005), and requires parties to "show that despite their diligence the time table could not have reasonably been met," *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995) (citations omitted).

Amtrak argues that Plaintiff cannot show good cause for failing to seek this amendment prior to the July 13, 2012 deadline to seek leave to amend pleadings because the acts and omissions allegedly supporting her punitive damages claim, namely the speed of the train and the manner in which the engineer operated the horn, closely track the acts and omissions set forth in her original Complaint. The parties agree on this point, as Plaintiff also contends that the underlying facts remain the same. In the original Complaint, Plaintiff alleged that Amtrak "[f]ailed to properly and adequately activate its horn when it knew or should have known it was reasonably necessary to do so" and "[o]perated a passenger train at a rate of speed that was greater than reasonable." (Compl., ¶ 13(e), (h)). Thus, Amtrak asserts that this information was available to Plaintiff a year ago, noting that the event recorder download for the train shows that the train was operating at 61 miles per hour and that the engineer activated the train's horn in four sequences beginning 22 seconds before impact. Amtrak notes that at least three public records concerning the track speed limit were available to Plaintiff before she filed her original Complaint. Amtrak also argues that Plaintiff never indicated to Amtrak or the Court that liability discovery was being pursued to develop evidence to support a punitive damages claim against Amtrak in either of her motions to extend the discovery deadline filed on December 3, 2012, and April 11, 2013.

First, Plaintiff replies that she did not receive the train's event recorder download from Amtrak until July 23, 2012, when Amtrak answered Plaintiff's written discovery, which was after

5

the deadline of July 13, 2012, to seek leave to amend pleadings. Unlike in *Trustmark*, in which the plaintiff harbored suspicions of the facts underlying the equitable estoppel claim it sought to add in an amended complaint well before the filing of the original complaint, *see* 424 F.3d at 553, Plaintiff in this case states that, although she was aware of the facts regarding speed and the pattern of horn blowing underlying her negligence claim, she was not aware that Amtrak's violations of the applicable regulations were so great under railroad standards that they evidenced intentional, deliberate, and reckless behavior on the part of Amtrak's employees, as opined by Mr. Fulk. As an example, Plaintiff was unaware that the sequence in which the train's engineers sounded the horns and their failure to heed the applicable speed limit, when combined with the foggy conditions, evidenced them being "lost," which means being unsure of the train's position in relation to the track route. Plaintiff also was not aware that the failure of the train's engineers to slow their speed under these conditions constituted recklessness, given that the engineers knew or should have known that they were "lost" and yet chose to exceed the applicable speed limit.

Although Amtrak questions the basis and admissibility of Mr. Fulk's opinions underpinning the instant motion, this is not a *Daubert* motion, and the Court makes no ruling on the admissibility of Mr. Fulk's opinions and report. Rather, the Court finds that Plaintiff's receipt of Mr. Fulk's report prompted Plaintiff to discover what she believes to be a basis for a claim for punitive damages in light of Mr. Fulk's experience, including his having previously operated the specific locomotive involved in this accident.

Amtrak contends that it relied on Plaintiff's original Complaint as alleging only ordinary negligence for approximately eighteen months. While Amtrak excoriates Plaintiff for not seeking leave to amend prior to the June 13, 2012 deadline, absent from Amtrak's brief is any contention that

it will suffer prejudice as a result of the addition of the punitive damages claim. Nor does Amtrak argue that any additional discovery would be required or that the amendment will cause any delay of the proceedings in this case.

Thus, for purposes of this Motion for Leave to Amend the Complaint, Plaintiff has shown good cause for modifying the deadline to seek leave to amend pleadings in the Court's Scheduling Order.

*2. Futility*

Amtrak argues that Plaintiff's attempt to amend her Complaint to add a punitive damages claim is futile because the amendment fails to state a viable claim for punitive damages as a matter of law. Specifically, Amtrak argues that the proposed amendment does not contain sufficient factual allegations to survive a motion to dismiss and that it is barred by federal preemption principles. As set forth above, the standard for futility is the same standard of legal sufficiency that applies to a motion to dismiss under Rule 12(b)(6).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting

7

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). However, this standard does not require a plaintiff to include "detailed factual allegations." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citing *Skinner v. Switzer*, — U.S. — , 131 S. Ct. 1289, 1296 (2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Twombly*, 550 U.S. at 570). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

    a. Factual allegations

Amtrak asserts that Plaintiff's proposed claim for punitive damages does not contain a single fact that supports a plausible claim for punitive damages under either Indiana law or the Amtrak Act.

Under Indiana law, a claim for punitive damages is only available upon a showing by clear and convincing evidence that the defendant "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 136 (Ind. 1988) (internal quotation marks omitted) (quoting *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1023 (Ind. 1986)). In essence, a plaintiff must prove conduct that is wanton and willful. *See Davidson v. Bailey*, 826 N.E.2d 80, 89 (Ind. Ct. App. 2005) (citing *Wohlwend v. Edwards*, 796 N.E.2d 781 (Ind. Ct. App. 2003)); *see*

*also Nemecek v. Karamacoski*, No. 2:03cv346, 2005 WL 1185282, at *8 (N.D. Ind. 2005). "Willful and wanton conduct has been held to include an intentional act done with reckless disregard of the natural and probable consequences of injury to a known person under the circumstances known to the actor at the time." *Davidson*, 826 N.E.2d at 89 (citing *Witham v. Norfolk & Western Ry. Co.*, 561 N.E.2d 484 (Ind. 1990)).

However, this Indiana state law standard for punitive damages is preempted by the statutory requirements set forth in the Amtrak Reform and Accountability Act of 1997 ("Amtrak Act"), which provides, in the section titled "limitations on rail passenger transportation liability":

> Notwithstanding any other statutory or common law or public policy, or the nature of the conduct giving rise to damages or liability, in a claim for personal injury to a passenger . . . arising from or in connection with the provision of rail passenger transportation . . . , *punitive damages, to the extent permitted by applicable State law, may be awarded . . . only if* the plaintiff establishes by clear and convincing evidence that the harm that is the subject of the action was the result of conduct carried out by the defendant with a *conscious, flagrant indifference to the rights or safety of others*.

49 U.S.C. § 28103(a)(1) (emphasis added); *see Deweese v. Nat'l R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239, 249 n. 12 (3d Cir. 2009) ("Subsection (a) preempts state law with respect to punitive damages and aggregate liability." (citing 49 U.S.C. § 28103(a)); *Miller v. Ill. Cent. R.R. Co.*, 474 F.3d 951, 952 (7th Cir. 2007) (noting that 49 U.S.C. § 28103(a)(1) restricts the award of punitive damages in suits against Amtrak).

As an initial matter, Amtrak's argument that Plaintiff's proposed amendment contains only conclusory, threadbare allegations is disingenuous. Although Plaintiff's allegations use the language of the legal standard that Amtrak acted "willfully and wantonly," acted with "reckless disregard," and "deliberately and intentionally failed to properly and adequately activate the horn," Pl. Br., Exh. 2, ¶ 29, Plaintiff further includes seven factual allegations regarding Amtrak's actions, as set forth

9

above. Whether an act or omission is committed willfully and wantonly or deliberately and intentionally is a factual determination for the jury. *See Savage v. State*, 650 N.E.2d 1156, 1161 (Ind. Ct. App. 1995), *aff'd in part, adopted in part, vacated in part*, 655 N.E.2d 1223 (Ind. 1995).

Amtrak's futility argument would require the Court to address the merits of Plaintiff's claim by examining the opinion of Mr. Fulk and weighing facts and evidence under the clear and convincing standard, which is inappropriate at this stage of the litigation. Amtrak cites seven cases in support of its statement that "[d]ecisions applying Indiana law have repeatedly refused to permit punitive damages in vehicular accident cases where plaintiff's evidence was at least as compelling as the meager evidence contained in Plaintiff's expert report." Def. Br., p. 19. Amtrak begins the explanatory parenthetical for each with the phrase "punitive damage claim dismissed . . . ." *Id*. However, not one of the cases ruled on a motion to dismiss or a motion for leave to amend complaint; rather, six of the cases issued rulings on summary judgment, and one was an appeal of a case that went to trial.[1] Whether Plaintiff can survive summary judgment or make out her claim for punitive damages at trial is an issue for another day. Plaintiff's proposed claim for punitive damages is sufficiently supported by facts to state a plausible claim such that the proposed amendment would not be futile, and the Court will not deny the motion to amend on this basis.

Amtrak also asks the Court to strictly construe the Amtrak Act to require more than mere vicarious liability in order to hold it, as a corporate defendant, liable for punitive damages based on

---

[1] *Purnick v. C.R. England, Inc.*, 269 F.3d 851, 852-54 (7th Cir. 2001) (summary judgment); *Powell v. United Parcel Service, Inc.*, no. 1:08-cv-1621, 2011 WL 836949, at *4 (S.D. Ind. March 4, 2011) (partial summary judgment); *Nemecek v. Karamocoski*, No. 2:03cv346, 2005 WL 1185282, at *8-9 (N.D. Ind. May 19, 2005) (summary judgment); *Wanke v. Lynn's Transp. Co.*, 836 F. Supp. 587, 604 (N.D. Ind. 1993) (partial summary judgment); *Austin v. Disney Tire Co., Inc.*, 815 F. Supp. 285, 287-90 (S.D. Ind. 1993) (partial summary judgment); *Westray v. Wright*, 834 N.E.2d 173, 180-81 (Ind. Ct. App. 2005) (trial); *Samuel v. Home Run, Inc.*, 784 F. Supp. 548, 551-52 (S.D. Ind. 1992) (partial summary judgment).

the alleged misconduct of its employees. Under Indiana law, it appears that a corporate employer can be held vicariously liable for punitive damages for the wrongful conduct of its employee who was acting within the scope of his employment. *See Hibschman Pontiac, Inc. v. Batchelor*, 362 N.E.2d 845, 848 (1977) (allowing a punitive damages claim against the corporation based on the actions of its agents); *see also Hartford Fire Ins. Co. v. Guide Corp.*, IP 01-572-C-Y/F, 2005 WL 5899840, at *5 (S.D. Ind. Feb. 14, 2005) (discussing the policy behind permitting corporations to shift to an insurer the punitive damages award when that award is placed upon the corporation solely as a matter of vicarious liability); *Infinity Prods., Inc. v. Quandt*, 775 N.E.2d 1144, 1154 (Ind. Ct. App. 2002), *transfer granted*, *opinion vacated*, 792 N.E.2d 47 (Ind. 2003), *and vacated*, 810 N.E.2d 1028 (Ind. 2004) (noting that the majority rule at common law, recognized by Seventh Circuit Court of Appeals Judge Posner in *Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.*, 833 F.2d 633, 638 (7th Cir. 1987), that the employer is liable for the punitive as well as compensatory damages of the employee's torts is the prevailing rule in Indiana); *Stroud v. Lints*, 760 N.E.2d 1176, 1185 (Ind. Ct. App. 2002), *vacated*, 790 N.E.2d 440 (Ind. 2003) (recognizing that Indiana appears to allow a corporation to be held vicariously liable for punitive damages assessed against an employee when the tortious conduct of the employee occurred in the scope of employment (citing *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 474-75 (Ind. Ct. App. 1996), *trans. denied*; *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999)).

In the definitions section of § 28103, the Amtrak Act defines the term "punitive damages" as damages awarded against any person or *entity* to punish or deter such person or entity, or others, from engaging in similar behavior in the future." 49 U.S.C. § 28103(e)(2). Although Amtrak cites *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), for its analysis of the law of vicarious

11

liability and punitive damages under Title VII, which is a federal statute, and although Amtrak points to references in the legislative history of the Amtrak Act to Amtrak's financial crisis and need to improve its overall financial condition, Amtrak does not identify any language in the Amtrak Act itself that supports this limitation on vicarious liability. Amtrak does not explain why the Court should read such a limiting provision into the Amtrak Act given that Congress explicitly included limiting language for punitive damages but did not do so for vicarious liability. At this stage of the proceedings, Amtrak has not demonstrated that the Amtrak Act prohibits a claim of vicarious liability against Amtrak for punitive damages.

      b. Preemption of negligence claims

Finally, Amtrak argues that the Federal Railroad Safety Act, 49 U.S.C. § 20101, *et seq.*, and Federal Railroad Administration regulations covering train speed and horn operation combine to preempt any state common law tort claims based on those subjects, including, in particular, the instant punitive damages claim. At no point in this litigation did Amtrak file a motion to dismiss the negligence claim, which is based on train speed and horn operation and upon which the punitive damages claim is based. The Court will not permit Amtrak to do an end-run around the procedures set forth in Federal Rule of Civil Procedure 12(b)(6) for dismissal based on a failure to state a claim by instead challenging the legal basis of the negligence claim pled in the original Complaint through its opposition to the addition of a punitive damages claim flowing from the same negligence claim. Amtrak does not challenge a claim by Plaintiff that Amtrak's employees operated the train in excess of the speed limit set by federal regulations and did not sound the train's horn as required by federal regulations. Moreover, Amtrak's analysis in this section of its brief again argues the merits of

whether Plaintiff will be able to prove her claim for punitive damages; again, merits-based arguments are premature.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Second Motion for Leave to Amend the Complaint [DE 59] and **ORDERS** Plaintiff to **FILE** the Second Amended Complaint upon receipt of this Opinion and Order.

SO ORDERED this 9th day of September, 2013.

                                           s/ Paul R. Cherry
                                          MAGISTRATE JUDGE PAUL R. CHERRY
                                          UNITED STATES DISTRICT COURT

cc:     All counsel of record